## PRINCE v. HOOKS. HOOKS v. PRINCE et al.

Nos. 8657, 8665.   MAY 12, 1932.

798

*C. C. Crockett, William Brunson,* and *Martin, Martin, Snow & Gillen,* for plaintiff.

*Hall, Grice & Bloch* and *Ellsworth Hall Jr.,* for defendant.

BECK, P. J. (After stating the foregoing facts.)

We are of the opinion that the court did not err in directing a verdict in favor of the defendant, Hooks, against Mrs. J. Y.

Prince. The suit in the case first stated above was instituted by Mrs. Prince against Hooks, for injunction, and to recover a judgment against the defendant for a stated amount of damages on breach of warranty, and for rescission of a contract. In the petition it is alleged, in substance, that petitioner purchased from the defendant certain described realty consisting of a house and lot and executed a series of promissory notes to the vendor in payment for the same; that at the time of the sale of the property the defendant had executed to petitioner a warranty deed to the realty, subject to an outstanding first loan in favor of the Georgia Casualty Company for $6,000, which petitioner had assumed as a part of the purchase-price, and, to better secure the payment of the purchase-money notes, she executed to the vendor a security deed containing a power of sale; that at the time of the purchase the vendor "guaranteed that this loan would be renewed by the Georgia Casualty Company, and the said loan did mature on the 15th day of October, 1928, and petitioner at the time put the said T. W. Hooks on notice that the loan was now due, and that under this contract he must renew the loan; that petitioner was advised in writing that the Casualty Company would not renew it;" that defendant failed to get a renewal of the loan; that petitioner had paid out, as purchase-money, interest, and insurance on this property, the total of $4,155.58; that a fair rental value of the property was $100 per month; that the defendant "has rescinded this contract, by reason of his breach of warranty, and has failed and refused to comply with the covenants in said contract, and that your petitioner has been injured and damaged by the breach of warranty in the sum of $1,755.58;" that defendant is insolvent; that in February, 1928, Hooks executed to the Fourth National Bank of Macon certain notes to secure his indebtedness to that bank, amounting to $92,478.26, upon which he gave a second mortgage on all of his property; that on April 1, 1929, acting under the power of sale referred to above, he advertised and is advertising the property for sale before the court-house door of Laurens County.

The defendant filed his answer alleging that the Georgia Casualty Company, though not formally renewing its loan, had tacitly consented to an extension and had made no attempt to foreclose; that the plaintiff had breached her contract by failing

and refusing to pay the insurance and the taxes, and refusing to pay her past-due notes for the purchase-price of the property; that another agreement was made between the plaintiff and the defendant with respect to the renewal of the Casualty Company's loan, "which subsequent agreement was substituted for that clause in the deed wherein T. W. Hooks guaranteed to Mrs. J. Y. Prince the renewal of the indebtedness to the Casualty Company, for that on the 26th day of October, 1928, the said Hooks and the said Mrs. Prince did in writing stipulate and agree that Mrs. Prince was to make application for a new loan for the purpose of taking up and paying off the old loan made to said Hooks by the Georgia Casualty Company for $6,000.00, in which new agreement the said Hooks agreed that he was to pay all expenses for making this loan, except $100.00; the said Hooks further agreeing to cancel this security deed made by Mrs. J. Y. Prince to him, and when the new loan was closed Mrs. Prince was then to give said Hooks new notes for the full amount due him and a second security deed subordinate to the loan deed made to take the place of the one held by Georgia Casualty Company; said substituted agreement further provided that the new notes would be so arranged that Mrs. Prince would pay $50 per month from January 1, 1929, to January 1, 1930, the remainder of the notes to be each for the sum of $125 per month, the same as in the original contract; and also said substituted agreement further provided that Mrs. Prince was to paint the building at her own expense and was to keep the taxes and insurance paid on the property and to keep the interest paid on the new loan."

The verdict, as stated above, was directed by the court, and contained a finding against the plaintiff, Mrs. Prince, in favor of the defendant, Hooks, on his cross-action, for the sum of $3,687.10 principal, besides interest, and judgment was entered accordingly.

We are of the opinion that the court did not err in directing the verdict for the defendant in the first or main case, under his answer and cross-action and the evidence adduced. While Hooks had not procured a renewal of the loan referred to from the Casualty Company, the larger part of that loan had been paid, and no attempt was made by the Casualty Company to foreclose the same or to interfere with the possession of the property by

Mrs. Prince. Besides that, on October 26, 1928, a change was made in that part of the original contract of sale, relating to the extension of the loan. The letter of Hooks to Mrs. Prince upon this subject, dated October 26, 1928, was as follows:

"Dear Mrs. Prince: I hereby agree for you to make application for a new loan on the Colonial Hotel property, for the purpose of taking up and paying off the old loan made to me by the Georgia Casualty Company for $6,000.00. I am to pay all expenses for making this loan, except $100 which is to be charged to you. When the new loan is made, I hereby agree to cancel the security paper that you made to me to secure the purchase-money notes that you gave to me in payment for said property; and when the new loan is closed and my security paper is canceled, you are to give me new notes for the full amount that you will owe me then, and a second security deed subordinate to the loan deed you make, in securing the loan above stated. When we figure up the amount that you will be due me after the new loan is made, we will then arrange new notes, so that you may start paying $50 per month from January 1st, 1929, to January 1st, 1930, the remainder of the notes to be for the sum of $125 per month, the same as the original contract. It is agreed and understood that you are to paint the building at your expense, and you are to keep the taxes and insurance paid on the property and to keep the interest paid on the new loan. In consideration of the extension in time from now until January 1st, 1929, and the further consideration of the reduced payments, after the first of the year you are to proceed immediately to have the building painted and repaired by January 1st, 1929.

Yours very truly,             T. W. Hooks."

Then following this writing is the following:

"I hereby accept the terms and conditions above set forth in this letter.             [Signed] Mrs. J. Y. Prince."

Under the pleadings and the evidence submitted to the court, a verdict in favor of Hooks was demanded.

■ Nor did the court err, in the second of the cases stated above, in passing the order striking the two amendments filed by the defendant Hooks, which order had the effect of refusing to make certain named fire-insurance companies and L. E. Prince parties to the cause. If Mrs. Prince fraudulently transferred the

property insured to her son, or fraudulently transferred the policies to her son, still the creditors of Mrs. Prince could not recover this insurance even if L. E. Prince, the son, and the insurance companies had been made parties to the main suit. "Except to the extent that there is a statutory provision to the contrary, a general creditor of the owner of the property has no insurable interest therein; and accordingly he has no claim on the proceeds of a policy of insurance thereon taken out by the owner thereof, nor can such a creditor reach the proceeds of insurance taken out by a third person to whom the owner has fraudulently conveyed the property." 26 C. J. 445, § 595. In *First National Bank of Dublin* v. *Colonial Fire Insurance Co.,* 160 *Ga.* 166 (127 S. E. 455), it was said: "Although the conveyance from J. D. Boney Sr. to W. M. Boney was fraudulent, and therefore void as to the creditors of the former, it was nevertheless valid as between the grantor and grantee. . . The policies of insurance taken out by J. D. Boney Sr. having been assigned by him to W. M. Boney, with the assent of the companies, when the former conveyed the premises insured to W. M. Boney, the effect of the transaction was as if, upon the assignment of the policies to W. M. Boney with the assent of the insurers, new policies had been issued to the last named upon the same terms as those contained in the old policies. . . In the circumstances neither J. D. Boney Sr. nor his creditors could hold the insurers liable, it being well settled that creditors can not reach by garnishment assets which their debtor could not recover from the garnishee. . . It follows that the same rule is applicable when the proceeding to reach such assets is in the nature of an equitable garnishment." Under the facts in the case from which the last quotation is taken, the ruling there made is applicable to the questions presented here; and under that ruling the court did not err in refusing to make the insurance companies and L. E. Prince parties, as no recovery could have been had by the defendant in the main suit under the allegations in the amendments.

*Judgments in both cases affirmed. All the Justices concur, except Hines, J., absent for providential cause.*